IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARLOS OLIVO VAZQUEZ,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 25-CV-4872** |
| : | |
| **JOSEPH TERRA,** *et al.* : | |
|     **Defendants.** : | |

**MEMORANDUM**

**PEREZ, J.**                                                                                        **NOVEMBER 17, 2025**

*Pro se* Plaintiff Carlos Olivo Vazquez, a prisoner currently incarcerated at SCI Dallas, has filed a Complaint asserting civil rights claims.  He also seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant leave to proceed *in forma pauperis* status and permit Vazquez to proceed on his Eighth Amendment excessive force claims against Correctional Officers Armstrong, Brown, and Smothers in their individual capacities only.

**I.      FACTUAL ALLEGATIONS**[1]

The events giving rise to Vazquez's claim took place in the Restricted Housing Unit ("RHU") at SCI Phoenix on October 13, 2023.  (Compl. (ECF No. 1) ¶¶ 9-10.)  Vazquez avers that Department of Corrections ("DOC") regulations require RHU inmates to be secured and handcuffed prior to a correctional officer entering the cell, and that between 9 p.m. and 6 a.m., an inmate's cell should not be opened without a lieutenant or higher-ranking officer present.  (*Id*. ¶ 13.)  Vazquez asserts that contrary to those rules, Defendant Smothers opened his RHU cell from the unit's control room in the early morning hours of October 13, allowing Defendants

---

[1] The factual allegations are taken from Vazquez's Complaint (ECF No. 1).  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

Armstrong and Brown to enter the cell. (*Id*. ¶ 20.) At some time between 4 and 5 a.m., Armstrong entered Vazquez's cell while he was asleep and woke him, telling Vazquez to remove the cover on the observational camera in his cell "or face consequences if you don't." (*Id*. ¶¶ 10, 12, 14.) Vazquez noticed Defendant Brown standing at the entrance of his cell and told Brown to remove the camera covering himself since he was already in the cell. (*Id*. ¶ 15.) Armstrong then became angry, called Vazquez a "bitch," removed the coverings on the observational camera and threw them at Vazquez, striking him in the face. (*Id*. ¶ 16.) Vazquez "grabbed [the] coverings [and] attempted to throw them back" at Armstrong while walking to the entrance of the cell and calling for a lieutenant. (*Id*. ¶ 17.) Brown then attacked Vazquez, striking him with closed fists, and kicking and choking him. (*Id*. ¶ 18.) Vazquez tried to block the blows, but Armstrong held his arms while Brown continued to strike him. (*Id*. ¶ 19.) "After a period of [Vazquez] yelling for help," Defendant Smothers, who had been serving as a lookout for Brown and Armstrong, then came into the cell and told the other correctional officers "enough, we been in here too long[,] we gotta go." (*Id*. ¶ 20.) Vazquez alleges the CO's then "exited [the] cell[,] leaving [him] with injuries and personal property scattered and destroyed throughout [the] cell." (*Id*. ¶ 21.) Vazquez states that after the incident, he "was made aware that both C.O. Armstrong and C.O. Brown [were] escorted out [of] the prison," and he was taken for medical evaluation and to speak with security. (*Id*. ¶ 22.) The October 13 incident was referred to the DOC's Bureau of Investigations and Intelligence, and the assigned agent later informed Vazquez he "would not be seeing C.O. Brown or C.O. Armstrong any longer." (*Id*. ¶¶ 23-24.)

After the incident, Vazquez attempted to inform Defendant Terra, the Superintendent of SCI Phoenix, "of on-going mistreatment and abuse" taking place at the prison. (*Id*. ¶ 25.)

2

However, Terra "refuse[d] to respond, den[ied] any wrong-doing of staff, or den[ied] receiving any notice of [the] allegations." (*Id*. ¶ 26.)

As a result of the October 13, 2025 use of force incident, Vazquez asserts he suffers from severe anxiety, depression, paranoia, has been subjected to "periodic harassment" by DOC staff, and takes mental health medication. (*Id*. ¶ 27.) Vazquez seeks $200,000 in compensatory and punitive damages from each Defendant and a declaratory judgment. (*Id.* at 9.)

## II.    STANDARD OF REVIEW

The Court grants Vazquez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Vazquez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.    DISCUSSION

Vazquez raises claims under 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

In the relief section of his Complaint, Vazquez states that he brings claims for damages against all Defendants in their individual and official capacities. (Compl. at 9.) The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against Commonwealth officials, like the Defendants in this case, acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, Vazquez's official capacity claims against the Defendants are dismissed with prejudice.

The Eighth Amendment claim against Defendant Terra is not plausible. Vazquez alleges that he attempted to inform Terra about "on-going mistreatment and abuse" taking place at SCI Phoenix but he refused to respond. (Compl. ¶¶ 25-26.) Somewhat at odds with the allegation that he refused to respond, as well as Vazquez's allegations that Terra both denied any wrong-doing by staff and denied receiving notice of his allegations, he also asserts that the incident was investigated and C.O. Armstrong and C.O. Brown were disciplined and perhaps fired. (*Id.* ¶ 26.) To the extent Vazquez's claims can be interpreted as based on Terra's involvement in reviewing a grievance or informal complaint Vazquez filed, his claim is not actionable under § 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *see also Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

Vazquez also does not allege that Terra was personally involved in the October 13 use of force incident, only that he failed to respond to his reports of "on-going mistreatment and abuse." However, a supervisor's mere knowledge of allegations against subordinates is insufficient to state a plausible claim against him. *See Murray v. McCoy*, No. 23-2582, 2024 WL 1328231, at *3 (3d Cir. Mar. 28, 2024) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement") (citing cases); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response

5

did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances).  Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis.  *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*).

     Neither can Vazquez state a plausible claim against Terra merely based on his supervisory role as the superintendent of SCI Phoenix.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or,

6

as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

Because Vazquez alleges that the individuals who were involved in the excessive force incident were disciplined, there is no plausible basis for a claim that Terra acted with deliberate indifference to a policy that caused Vazquez constitutional harm. Because Vazquez also fails to allege that Terra was personally involved in the incident, there is no plausible basis to impose supervisory liability. Accordingly, the Court will dismiss the claims against Terra with prejudice because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Vazquez leave to proceed *in forma pauperis*, dismiss his claims against Defendant Terra with prejudice, and direct service of the Complaint against Defendants Brown, Armstrong, and Smothers to respond to Vazquez's plausible excessive force claims. An appropriate Order follows.

BY THE COURT:

_____
**HON. MIA R. PEREZ**